John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
Alejandro Marin (SBN 33251891)
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: 310-507-7924
Facsimile:  310-507-7906
*john@kristensenlaw.com*
*jesenia@kristensenlaw.com*
*alejandro@kristensenlaw.com*

Jarrett Ellzey (*Pro Hac Vice*)
Texas Bar No. 24040864
**HUGHES ELLZEY, LLP**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Facsimile: (888) 995-3335
*jarrett@hughesellzey.com*

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ANGELICA MORA, an individual, | ) Case No.: 2:20-cv-00414 JFW (JCx) |
| | ) |
| Plaintiff, | ) **PLAINTIFFS' UNOPPOSED** |
| vs. | ) **MOTION FOR APPROVAL OF** |
| | ) **FLSA SETTLEMENT** |
| STARS PLANET, INC. DBA | ) |
| SILVER REIGN GENTLEMEN'S | ) **Hearing** |
| CLUB, a California Corporation; JOE | ) Date:     March 22, 2021 |
| DIAZ, an individual; STANLEY | ) Time:     1:30 p.m. |
| YANG, an individual; BECKY | ) Dept:     7A |
| SHEELY, an individual; DAVID | ) Judge:    Hon. John F. Walter |
| CHEW, an individual; DOE | ) |
| MANAGER 3; and DOES 4-100, | ) Complaint Filed:  January 15, 2020 |
| inclusive, | ) Trial Date:      May 25, 2021 |
| Defendants. | ) |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, March 22, 2021 at 1:30 p.m. in Department 7A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, plaintiffs Angelica Mora, Giselle Ojeda, Wanda Brock, Amande DeSimone, Sara Gohl, Monica Huldt, Asppen Webber, Amara Paladino, Yordanka Parra Guerrero, Janee Collins, Louise Chatkowski, Wednesday Webber, Breiana Guentner, and Jessica Schloss (collectively, "Plaintiffs"), by and through their undersigned counsel, hereby request approval of the settlement agreements (the "Agreements") reached between Plaintiffs and defendants Stars Planet, Inc. dba Silver Reign Gentleman's Club, Joe Diaz, Stanley Yang, Becky Sheely and David Chew (collectively "Defendants") (Plaintiffs and Defendants will be referred to collectively as the "Parties").

///
///
///
///
///
///
///
///
///
///
///
///
///
///

The Agreements are attached as exhibits to the Declaration of John P. Kristensen filed concurrently with this Joint Motion. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 29, Exhibits ("Exs.") 1-14. Plaintiffs submit that the Court should approve the Settlement for the reasons described below. This Motion is made following the multiple conferences of counsel pursuant to L.R. 7-3 which took place prior to filing this motion. Defendants do not oppose this Motion. *See* Dkt. 74.

Dated:  February 22, 2021          **KRISTENSEN LLP**

/s/ *John P. Kristensen*

John P. Kristensen
Jesenia A. Martinez
Alejandro Marin

***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.      INTRODUCTION & PROCEDURAL HISTORY ........................ 1

II.     FACTUAL BACKGROUND ........................................... 2

III.    LEGAL GROUNDS OF PLAINTIFFS' CLAIMS ..................... 3

IV.     THE SETTLEMENT AGREEMENTS ................................. 4

V.      STANDARD FOR APPROVAL OF FLSA SETTLEMENTS ......... 8

VI.     APPROVAL OF THE FLSA SETTLEMENT ....................... 10

        A.   Bona Fide Dispute .......................................... 10

        B.   Fair and Reasonable Resolution ......................... 11

             1.   *Plaintiffs' Possible Range of Recovery* ...................... 12

             2.   *The Stage of Proceedings and Amount of
                  Discovery Completed* ...................................... 16

             3.   *Seriousness of the Litigation Risks Faced by the
                  Parties* ..................................................... 16

             4.   *Scope of Any Release Provision in the Settlement
                  Agreements* ................................................ 17

             5.   *Experience and Views of Counsel and Opinion of
                  Participating Plaintiffs* .................................. 18

             6.   *Possibility of Fraud or Collusion* ........................ 18

VII.    ATTORNEYS' FEES AND COSTS .................................. 19

VIII.   CONCLUSION ..................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Farmers Ins. Exch*.,
    No. 3:14-CV-00574-WHO, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017)20

*Ambrosino v. Home Depot. U.S.A., Inc*.,
    No. 11-CV-1319-MDD, 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014)....17

*Association of Disabled Americans v. Neptune Designs, Inc*.,
    469 F.3d 1357 (11th Cir.2006)...................................................................20

*Barrentine v. Arkansas–Best Freight System*,
    450 U.S. 728 (1981) .....................................................................................9

*Benshoff v. City of Virginia Beach*,
    180 F.3d 136 (4th Cir. 1999).......................................................................15

*Berry v. Great American Dream, Inc*.,
    No. 1:13-CV-3297-TWT, 2014 WL 5822691
    (N.D. Ga. Nov. 10, 2014) ............................................................................14

*Bivins v. Wrap It Up, Inc*.,
    548 F.3d 1348 (11th Cir. 2008)...................................................................19

*Canh Le v. DirecTV, LLC*,
    No. 2:16-cv-01369-SVW-AS, 2017 U.S. Dist. LEXIS 221945
    (C.D. Cal. Nov. 2, 2017) .............................................................................14

*Cheeks v. Freeport Pancake House, Inc.*,
    796 F.3d 199 (2d Cir. 2015)........................................................................15

*Cicero v. DirecTV, Inc*.,
    No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010)..........20

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992).....................................................................17

*Clincy v. Galardi South Enter., Inc.*,
    808 F.Supp.2d 1326 (N.D. Ga. 2011) ........................................................14

*Collins v. Sanderson Farms*,
  568 F.Supp.2d 714 (E.D. La. 2008) .........................................................10

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) .................................................................10

*Crabtree v, Volkert, Inc.*,
  No. 11-0529-WS-B, 2013 WL 593500 (S.D. Ala. Feb. 14, 2013) ...........21

*Cullens v. Georgia Dep't of Transp.*,
  29 F.3d 1489(11th Cir.1994).....................................................................20

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,
  No. 13-cv-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) .........8

*Espinoza, et al. v. Fly Low*,
  No. 12-cv-21244-Goodman (S.D. Fla. Sep. 20, 2018) ...............................7

*Garcia v. Jambox, Inc.*,
  No. 14-CV-3504-MHD, 2015 WL 2359502 (S.D.N.Y. Apr. 27, 2015)....17

*Glass v. UBS Financial Services, Inc.*,
  No. 06-CV-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)......12

*Gomez v. H & R Gunlund Ranches, Inc*.,
  No. CV F 10-1163 LJO MJS, 2011 WL 5884224
  (E.D. Cal. Nov. 23, 2011) ..........................................................................20

*Gonzalez v. Fallanghina, LLC*,
  No. 16-cv-01832-MEJ, 2017 WL 1374582 (N.D. Cal. Apr. 17, 2017).....10

*Greer v. Pac. Gas & Elec. Co.*,
  No. 15-CV-1066-EPG, 2018 WL 2059802 (E.D. Cal. May 3, 2018) .......12

*Harrell v. Diamond A Entm't, Inc.*,
  992 F.Supp. 1343 (M.D. Fla. 1997) ..........................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011).....................................................................18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3rd Cir. 1995).........................................................................10

*Jennings v. Open Door Mktg., LLC*,
    No. 15-CV-4080-KAW, 2018 WL 4773057
    (N.D. Cal. Oct. 3, 2018) .................................................................10, 12, 16

*Johnson v. MetLife, Inc.*,
    No. SACV 13-128-JLS, 2014 WL 12773568 (C.D. Cal. Nov. 6, 2014) ...12

*Johnson v. The Strip Joint, et al.*,
    No. 8:19-cv-1623-JVS-KES (C.D. Cal. Jan. 31, 2020) ..............................7

*Johnson v. The Strip Joint*,
    No.8:19-cv-01623-JVS-KES (Jan. 31, 2020) ........................................7, 17

*Kerzich v. County of Tuolumne*,
    335 F.Supp.3d 1179 (E.D. Cal. Aug. 14, 2018)...................................19, 21

*King v. My Online Neighborhood*,
    No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575
    (M.D. Fla. March 7, 2007) ....................................................................9, 10

*Larsen v. Trader Joe's Co.*,
    No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ....18

*Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*,
    18 F.3d 1527 (11th Cir. 1994)......................................................................9

*Levi v. Gulliver's Tavern, Incorporated*,
    No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) ...........14

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998)....................................................................16

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982).........................................................8, 9, 11

*Madrid v. teleNetwork Partners, LTD.*,
    No. 5:17-cv-04519-BLF, 2019 WL 3302812 (N.D. Cal. July 23, 2019)...10

*Mason v. Fantasy, LLC*,
    No. 13-CV-02020-RM-KLM, 2015 WL 4512327
    (D. Colo. July 27, 2015) ................................................................... 14

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
    No. 10-CV-5243-SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012) ..... 17

*Oregon Restaurant and Lodging Ass'n v. Perez*,
    816 F.3d 1080 (9th Cir. 2016) ...................................................... 1, 4

*Otey v. CrowdFlower, Inc.*,
    No. 12-cv-05524, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014) ............... 8

*Otey v. CrowdFlower, Inc.*,
    No. 12-cv-05524, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) ............... 9

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ...................................................... 17

*Reynolds v. Alabama Dep't of Transp.*,
    926 F.Supp. 1448 (M.D.Ala.1995) .............................................. 20

*Rodriguez v. Nationwide Mutual Ins.Co., et al.*,
    No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796
    (C.D. Cal. Nov. 16, 2017) ............................................................ 8

*Saleh v. Valbin Corp.*,
    No. 17-CV-0593-LHK, 2018 WL 6002320 (N.D. Cal. Nov. 15, 2018) .... 11

*Selk v. Pioneers Mem'l Healthcare Dist.*,
    159 F.Supp.3d 1164 (S.D. Cal. 2016) ..................... 10, 11, 12, 17, 18, 19

*Slezak v. City of Palo Alto*,
    No. 16-CV-03224-LHK, 2017 WL 2688224
    (N.D. Cal. June 22, 2017) .................................................. 16, 18, 19

*Soler v. G & U, Inc.*,
    658 F.Supp. 1093 (S.D.N.Y. 1987) ............................................. 15

*Stevenson v. Great American Dream, Inc.*,
    No. 1:12-CV-3359-TWT, 2013 WL 6880921 (N.D. Ga. Dec. 31, 2013) ..14

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1985) ................................................................... 15

*Trinidad v. Pret a Manger (USA) Ltd.*,
    No. 12-cv-6094 (PAE), 2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) .... 15

*Verma v. 3001 Castor*, *Inc.*,
    No. 13-3034, 2014 WL 2957453 (E.D. Pa. June 30, 2014) ....................... 14

*Wolinsky v. Scholastic, Inc.*,
    900 F.Supp.2d 332 (S.D.N.Y. 2012) ........................................................ 19

*Woodmore v. Solitaire Holdings, LLC dba Knockouts*,
    No. 2:19-cv-09017-RGK-AGR (Feb. 9, 2020) ..................................... 7, 17

**Statutes**

29 U.S.C. § 203 ............................................................................................. 1

29 U.S.C. § 203(m) ........................................................................................ 3

29 U.S.C. § 206 ............................................................................................. 1

29 U.S.C. § 207 ............................................................................................. 1

29 U.S.C. § 216(b) ............................................................................. 2, 9, 16, 19

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION & PROCEDURAL HISTORY

Plaintiffs Angelica Mora ("Mora"), Giselle Ojeda ("Ojeda"), Wanda Brock ("Brock"), Amanda DeSimone ("DeSimone"), Sara Gohl ("Gohl"), Monica Huldt ("Huldt"), Asppen Webber ("Webber"), Amara Paladino ("Paladino"), Yordanka Parra Guerrero ("Guerrero"), Janee Collins ("Collins"), Louise Chatkowski ("Chatkowski"), Wednesday Webber ("Webber"), Breiana Guenthner ("Guenthner"), and Jessica Schloss ("Schloss") (collectively "Plaintiffs") were exotic dancers at Defendants' club, Silver Reign Gentlement's Club. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 30.

On January 15, 2020, Mora filed the instant action with a causes of action for: (1) Failure to pay minimum wages, 29 U.S.C. § 206; (2) Failure to pay overtime wages, 29 U.S.C. § 207; (3) Unlawful taking of tips, 29 U.S.C. § 203; (4) failure to pay minimum wages in violation of Cal. *Lab. Code* §§ 1194 & 1197; (5) failure to pay overtime wages in violation of Cal. *Lab. Code* §§ 510, 1194 & 1197; (6) failure to furnish accurate wage statements, Cal. *Lab. Code* § 226; 97) waiting time penalties pursuant to Cal. *Lab. Code* §§ 201-203; (8) failure to indemnify business expecnses in violation of Cal. *Lab. Code* § 2802; (9) compelled patronization of employer and/or other persons in violation of Cal. *Lab. Code* § 450; and (10) violation of Caliufornia's Unfair Compeition Law (UCL), Cal. *Bus. & Prof. Code* §§ 17200, *et seq*. *See* Dkt. 1. A First Amended Complaint was filed the next day for a clerical matter. *See* Dkt. 2. The causes of action were based on misclassification of Mora as an "independent contractor."

On March 24, 2020, Plaintiffs filed a Second Amended Complaint, pursuant to a stipulation and order. The now operative Second Amended Complaint included additionally named individual defendants and two additional causes of action under the FLSA for illegal kickbacks (29 C.F.R. § 531.35) and forced tip sharing (29 C.F.R. § 531.45). Plaintiffs contend these are illegal

kickbacks. The forced tip sharing are payments to other employees, DJs or security, that amounts to the dancers subsidizing the clubs.

This Court issued an order conditionally certifying this collective action and ordering notice be provided to putative collective members. *See* Dkt. 56.

Prior to the issuance of notice, and afterwards, multiple plaintiffs filed their consent to join. The current plaintiffs besides Mora filed their consents to join on the following dates (all current plaintiffs are in this motion for settling, which would close this case if approved): Ojeda (Jan. 22, 2020 – Dkt. 24); Brock (Feb. 5, 2020 – Dkt. 31); Messer (June 22, 2020 – Dkt. 57); DeSimone (June 23, 2020 Dkt. 58); Gohl (June 23, 2020 – Dkt. 58); Huldt (June 25, 2020 – Dkt. 61); Paladino (June 26, 2020 – Dkt. 62); Webber (June 26, 2020 – Dkt. 62); Guerrero (July 9, 2020 – Dkt. 63); Collins (July 14, 2020 – Dkt. 64); Chatkowski (Aug. 3, 2020 – Dkt. 65); Schloss (Aug. 3, 2020 – Dkt. 65); Guenthner (Sept. 3, 2020 – Dkt. 69).

As this Court was aware, the Parties actively engaged in discovery with over ten depositions, there was a motion for notice pursuant to 29 U.S.C. § 216(b), a motion to compel and daily litigation for nearly a year. The parties attended a mediation in February, 2020 with Hon. Richard Stone (Ret.). The matter did not resolve. After attending a full day mediation with Hon. Carl West (Ret.) on November 25, 2020, the Parties reached the resolution as described in the Agreements for which they are now seeking approval. *See* Kristensen Decl. ¶ 31.

## II.    FACTUAL BACKGROUND

Plaintiffs were exotic dancers at Silver Reign Gentlemen's club in West Los Angeles within the three years prior to the filing of the lawsuit or the date they opted in as Plaintiffs. The individual owners of the club were Joe Diaz, David Chew and Stanley Yang. *See* Kristensen Decl. ¶ 32.

///

III.  **Legal Grounds of Plaintiffs' Claims**

Plaintiffs differentiated five types of claims for the dancers. The first two were for failure to pay minimum wage or overtime. In the beginning of 2020, Silver Reign began to start paying dancers hourly. That was not a factor in the settlement amounts. However, Plaintiffs also had three other forms of damages that they contended they were owed by the Defendants. *See* Kristensen Decl. ¶ 33.

First, Plaintiffs contend that dancers were charged house fees to work, which fees were illegal kickbacks pursuant to 29 C.F.R. § 531.35. *See* Kristensen Decl. ¶ 34. That regulation states, in pertinent part, as follows:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.

Plaintiffs also had claims for two types of tipping violations. First, the dancers were "encouraged" to tip the DJs, daily managers and security. The forced tipping, Plaintiffs' contend, is also a violation of 29 C.F.R. § 531.35, as it results in the dancers subsidizing the clubs' payment of wages to other employees. The second form of claimed damages for tips was the of individual private dances to customers which was retained by Defendants rather than being paid to Dancers. Defendants maintain these fees were fees charged by them and belonging to them. Plaintiffs allege these were tips that belonged to them and and were improperly taken. California state law regarding tip sharing is less favorable than the FLSA. In 2016, the Ninth Circuit ruled on the legality of a 2011 Department of Labor rule that extended the tip pool restrictions of Section 203(m) to all employers, not just those who take a tip credit. The United States District Courts for the District of Oregon and District of Nevada invalidated the ruling. The Ninth Circuit upheld

it. *Oregon Restaurant and Lodging Ass'n*, 816 F.3d at 1080. *See* Kristensen Decl. ¶ 35.

Thus, when Plaintiffs mediated this matter, there were four to five levels of claimed damages for each dancer that went into the valuation of the claims. There was also substantial debate regarding the number of shifts or dates each dancer worked. *See* Kristensen Decl. ¶ 36.

Defendants disagree with Plaintiffs' factual assertions. *See* Kristensen Decl. ¶ 37.

## IV.    THE SETTLEMENT AGREEMENTS

Under the Agreements, Defendants have agreed to pay Plaintiffs a gross settlement of $775,000 in three sets of payments. The first $200,000 will be paid within 14 days of approval. Then beginning on the earlier of September 1, 2021 or the first day half of the first month after the club is open, Defendants will begin a series of 24 monthly payments of $15,000 (totaling $360,000). At the end of that period, the Defendants will make a balloon payment of $215,000. If payment is not made, the Agreements contain stipulated judgments, enabling Plaintiffs to promptly enforce judgments for the remaining amounts owed. *See* Kristensen Decl. ¶¶ 29, 38; Exs. 1-14.

The allocations to the individual Plaintiffs are as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---|
| Angelica Mora | $100,000 |
| Gisella Ojeda | $140,000 |
| Wanda Brock | $40,000 |
| Janee Collins | $30,000 |
| Amanda DeSimone | $40,000 |
| Sara Gohl | $75,000 |
| Asppen Messer | $15,000 |

| | |
|---|---|
| Amara Paladino | $80,000 |
| Yordanka Parra Guerrero | $80,000 |
| Louise Chatkowski | $80,000 |
| Wednesday Webber | $20,000 |
| Monica Huldt | $40,000 |
| Jessica Schloss | $20,000 |
| Brieana Guenthner | $15,000 |
| **TOTAL** | **$775,000.00** |

*See* Kristensen Decl. ¶ 39.

Brock worked at Silver Reign from February 2019 until May 2019. She worked an estimated five (5) nights a week mostly and up to seven (7) nights a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $47,000 range. *Id.* at ¶ 40.

Ojeda has worked at Silver Reign off and on for 13 years. Thus, her claims covered the entire three year period. In 2018 to 2019, she worked on average three nights a week, including the weekends. In 2017, Ojeda worked less frequently. Ojeda estimates she worked 300 nights from 2018 to 2019 and slightly less in 2017. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $180,000 range. *Id.* at ¶ 41.

Mora worked at Silver Reign from August 2018 until January 2020. She started working three nights a week and increased to five times a week in early 2019. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $120,000 range. *Id.* at ¶ 42.

DeSimone worked at Silver Reign from May 2019 until March 2020. She worked around five days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $70,000 range. *Id.* at ¶ 43.

///

Gohl worked at Silver Reign from March 2016 until April 2019. She worked around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶ 44.

Huldt worked at Silver Reign from March 2017 until February 2019. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $70,000 range. *Id.* at ¶ 45.

Messer worked at Silver Reign from September to October 2019. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $20,000 range. *Id.* at ¶ 46.

Webber worked at Silver Reign from October 2019 until March 2020. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $40,000 range. *Id.* at ¶ 47.

Paladino worked at Silver Reign from July 2019 until March 2020. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶ 48.

Guerrero worked at Silver Reign from February 2019 until March 2020. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶ 49.

Collins worked at Silver Reign from May 2017 until February 2018. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $40,000 range. *Id.* at ¶ 50.

Chatkowski worked at Silver Reign from March 2016 until October 2019. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶ 51.

///

///

Schloss worked at Silver Reign from March 2016 until October 2019. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $30,000 range. *Id.* at ¶ 52.

Guenthner worked at Silver Reign from August to December 2019. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $20,000 range. *Id.* at ¶ 53.

Defendants' records had different amounts of shifts for each dancer. That played a role in weighing the value of each claim. *Id.* at ¶ 54.

Plaintiffs' counsel has significant experience in litigating employment cases. The settlement amounts and terms resulted in significant resolutions for the Plaintiffs. *See* Kristensen Decl. ¶¶ 2-54. Plaintiffs' counsel resolved a similar case for $85,000. That settlement was approved by Judge Selna. *See Johnson v. The Strip Joint, et al.*, No. 8:19-cv-1623-JVS-KES, Dkt. 29 (C.D. Cal. Jan. 31, 2020).

For further context, in the Southern District of Florida, similar FLSA claims went to trial. A pre-attorneys' fees judgment for nine plaintiffs totaling approximately $1.7 million was entered on September 20, 2018. *Espinoza, et al. v. Fly Low*, No. 12-cv-21244-Goodman, Dkt. 365 (S.D. Fla. Sep. 20, 2018)).

Plaintiffs' counsel incurred $25,005.48 in costs that are being allocated evenly to the Plaintiffs. Plaintiffs' counsel has a lodestar of $414,388.50 and pursuant to the retainer agreements and the release signed by the Plaintiffs, their counsel are entitled to 45% of the settlement. *See* Kristensen Decl. ¶¶ 29, 55, Exs. 1-16. Judge Selna and Judge Klausner have approved the same fee agreement structure in *Johnson v. The Strip Joint*, No.8:19-cv-01623-JVS-KES, Dkt. 29 (Jan. 31, 2020) and *Woodmore v. Solitaire Holdings, LLC dba Knockouts*, No. 2:19-cv-09017-RGK-AGR, Dkt. 17 (Feb. 9, 2020).

Plaintiffs' counsel litigated these cases extensively. The settlement amounts are significant amounts and take into account: the amount of time litigated; having to litigate a number of claims; the ability to reach resolution and collect, which is

relevant in this current unknown economic environment. *See* Kristensen Decl. ¶ 56.

In exchange for the consideration described above, Plaintiffs have agreed to dismiss their causes of action for alleged violations of the FLSA and any state wage and hour claims stemming from Plaintiffs' employment with the Defendants at issue in the Second Amended Complaint. *See* Kristensen Decl. ¶¶ 29, 57; Exs. 1-14.

## V.   STANDARD FOR APPROVAL OF FLSA SETTLEMENTS

"When employees bring a private action for back wages under the [FLSA], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Because "[t]he Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval," district courts in this Circuit widely follow the Eleventh Circuit's *Lynn's Food Stores* standard. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Rodriguez v. Nationwide Mutual Ins.Co., et al.*, No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796, at *1 (C.D. Cal. Nov. 16, 2017).

Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore, cannot be settled without supervision of either the Secretary of Labor or a district court. *See Lynn's Food Stores*, 679 F.2d at 1352-55; *see also Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 & n.5 (N.D. Cal. Apr. 15, 2014) (collecting cases applying *Lynn's Food Stores*).

Under *Lynn's Food Stores*, a district court may approve an FLSA settlement only if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524,

2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354. The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 739 (1981). Therefore, an employee's right to fair payment cannot be "abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

The Eleventh Circuit, following *Lynn's Food Stores*, in determining whether a settlement is fair and reasonable identified the factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

///

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted)). As discussed below, those factors strongly favor approval of this settlement.

## VI.    APPROVAL OF THE FLSA SETTLEMENT

### A.    Bona Fide Dispute

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017)). "That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims." *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019 WL 3302812, at *3 (N.D. Cal. July 23, 2019); *see Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (quoting *Collins v. Sanderson Farms*, 568 F.Supp.2d 714, 719-720 (E.D. La. 2008)).

The Court should approve the settlement because it reflects a reasonable compromise of bona fide dispute regarding Defendants' alleged FLSA liability. There was no collusion in reaching the Agreement. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreements reached were the result of good-faith, arms' length negotiation between the Parties aided by mediator Judge West. Mr. Kristensen has tried multiple employment cases and obtained substantial settlements against employers, including against another exotic dance club in excess of a million

dollars. Mr. Kristensen has been appointed class counsel, including three times in 2019 alone. Kristensen Decl. ¶¶ 2-28, 58. This Court oversaw the settlement of the class case in *Blair v. Bailey, et al.*, Case Number 8:19-cv-01849-JFW (ADSx)

The Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors and whether the dance fee charged by and collected by the Defendants belonged to the Defendants or was a tip belonging to the Plaintiffs. The Parties engaged in discovery, including the production of documents, approximately 10 depositions, discovery law motion, a motion for notice pursuant to section 216(b) of the FLSA. Counsel were cognizant and aware of each other's arguments and positions pertaining to employee classification. With the help of experienced mediators, the Parties defended their positions about the deisputed aspects of the case and a resolution was reached, after a second mediation. *See* Kristensen Decl. ¶ 59.

Because the Parties disputed these aspects of the case, the purpose of the bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp*., No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the parties.").

**B.    Fair and Reasonable Resolution**

To determine whether the settlement is fair and reasonable, the Court looks to the "totality of the circumstances" and the "purposes of [the] FLSA." *Selk*, 159 F.Supp.3d at 1173. In making this determination, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of

1    participating plaintiffs; and (6) the possibility of fraud or collusion. *See*, *e.g.*, *id.*;

2    *Jennings*, 2018 WL 4773057, at *4. The Parties will address each of these factors

3    accordingly.

### 1.    *Plaintiffs' Possible Range of Recovery*

5    Regarding Plaintiffs' range of possible recovery, courts in the Ninth Circuit

6    have found FLSA cases settling for approximately 25%–35% of the total possible

7    recovery to be reasonable. *See*, *e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*,

8    159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc*., No. 06-CV-4068-

9    MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452

10    (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co*., No. 15-CV-1066-EPG, 2018 WL

11    2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc*., No. SACV 13-

12    128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

13    Brock worked at Silver Reign from February 2019 until May 2019. She

14    worked an estimated five (5) nights a week mostly and up to seven (7) nights a

15    week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to

16    trial, to be in the $47,000 range. *Id.* at ¶ 40.

17    Ojeda has worked at Silver Reign off and on for 13 years. Thus, her claims

18    covered the entire three year period. In 2018 to 2019, she worked on average three

19    nights a week, including the weekends. In 2017, Ojeda worked less frequently.

20    Ojeda estimates she worked 300 nights from 2018 to 2019 and slightly less in

21    2017. Plaintiffs' counsel anticipated that her damages, had the case proceeded to

22    trial, to be in the $180,000 range. *Id.* at ¶ 41.

23    Mora worked at Silver Reign from August 2018 until January 2020. She

24    started working three nights a week and increased to five times a week in early

25    2019. Plaintiffs' counsel anticipated that her damages, had the case proceeded to

26    trial, to be in the $120,000 range. *Id.* at ¶ 42.

27    ///

28    ///

DeSimone worked at Silver Reign from May 2019 until March 2020. She worked around five days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $70,000 range. *Id.* at ¶ 43.

Gohl worked at Silver Reign from March 2016 until April 2019. She worked around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶ 44.

Huldt worked at Silver Reign from March 2017 until February 2019. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $70,000 range. *Id.* at ¶ 45.

Messer worked at Silver Reign from September to October 2019. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $20,000 range. *Id.* at ¶ 46.

Webber worked at Silver Reign from October 2019 until March 2020. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $40,000 range. *Id.* at ¶ 47.

Paladino worked at Silver Reign from July 2019 until March 2020. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶ 48.

Guerrero worked at Silver Reign from February 2019 until March 2020. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶ 49.

Collins worked at Silver Reign from May 2017 until February 2018. She worked at least around three days a week. Plaintiffs' counsel anticipated that her damages, had the case proceeded to trial, to be in the $40,000 range. *Id.* at ¶ 50.

///

///

///

1    Chatkowski worked at Silver Reign from March 2016 until October 2019.

2    She worked at least around three days a week. Plaintiffs' counsel anticipated that

3    her damages, had the case proceeded to trial, to be in the $90,000 range. *Id.* at ¶

4    51.

5    Schloss worked at Silver Reign from March 2016 until October 2019. She

6    worked at least around three days a week. Plaintiffs' counsel anticipated that her

7    damages, had the case proceeded to trial, to be in the $30,000 range. *Id.* at ¶ 52.

8    Guenthner worked at Silver Reign from August to December 2019. She

9    worked at least around three days a week. Plaintiffs' counsel anticipated that her

10    damages, had the case proceeded to trial, to be in the $20,000 range. *Id.* at ¶ 53.

11    Had this matter proceeded to trial (or arbitrations), the damages awarded

12    were within the ballpark of the settlement amount and are all significantly above

13    the 25%-35% reasonable percentage. The risk for Defendants was that in a fee-

14    bearing case, with a real likelihood of liability, the attorneys' fees would dwarf

15    the damages.[1] *See* Kristensen Decl. ¶ 60.

16    _____

17    [1]    Multiple district courts have found an employment relationship and required

18    clubs to pay dancers a minimum wage. *See Harrell v. Diamond A Entm't, Inc.*,
        992 F.Supp. 1343, 1348 (M.D. Fla. 1997); *Clincy v. Galardi South Enter., Inc.*,

19    808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) (summary judgment); *Stevenson v.
        Great American Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921

20    (N.D. Ga. Dec. 31, 2013) (same); *Berry v. Great American Dream, Inc*., No.
        1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014)

21    (Gentlemen's Club collaterally estopped from re-litigating issue that

22    entertainers are independent contractors rather than employees); *Mason v.
        Fantasy*, *LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D.

23    Colo. July 27, 2015); *Verma v*. *3001 Castor*, *Inc*., No. 13-3034, 2014 WL

24    2957453, at *5 (E.D. Pa. June 30, 2014): *Levi v. Gulliver's Tavern,
        Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018)

25    (granting dancer plaintiff's partial summary judgment that they are employees

26    under the FLSA). However, "Plaintiffs bear the burden of proving that they
        were employees covered under FLSA." *Canh Le v. DirecTV, LLC*, No. 2:16-

27    cv-01369-SVW-AS, 2017 U.S. Dist. LEXIS 221945, at *10-11 (C.D. Cal. Nov.

28    2, 2017) (citing *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir.

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

The Agreements reflect substantial awards to Plaintiffs. These resolutions are setting a benchmark for other settlements in FLSA dancers cases. Counsel spent considerable time litigating the matter which is evidenced in the lodestar of $414,388.50. Plaintiffs' counsel's skill, tenacity and the potential of a large attorneys' fees aware contributed to the overall settlement. This settlement is very favorable to Plaintiffs, and in light of the work performed in the lawsuit and the juncture of the settlement in the litigation, the settlement amounts are reasonable. Plaintiffs' counsel loadstar exceeds the requested fee by over $65,000. *See* Kristensen Decl. ¶¶ 29, 55, 61; Exs. 1-16.

///

///

---

1999) ("Those seeking compensation under the Act bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act.") "While the burden under California law may be different, the burden under FLSA is on the Plaintiffs." *Id*.

2.       *The Stage of Proceedings and Amount of Discovery Completed*

The Court must next assess "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Jenning*s, 2018 WL 4773057, at *5 (quoting *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017)). If the parties have "sufficient information to make an informed decision about [the] settlement, this factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

The Parties had engaged in written discovery and depositions (with more planned) by the time mediation took place. As the Court is aware, the Parties had fully briefed several motions before the Court that were pending, including Plaintiff's motion for issuance of notice pursuant to section 216(b) of the FLSA and Defendants' two motions to compel arbitration. The settlement is the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiation between counsel. The Parties had a good understanding of the merits of their positions by the time of the mediation, which led to the settlement reached. *See* Kristensen Decl. ¶ 62.

3.       *Seriousness of the Litigation Risks Faced by the Parties*

Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL 4773057, at *5. Several facts in this case potentially jeopardize Plaintiffs' recovery should this case proceed to trial (or arbitration), including Defendants' written employment policies and testimony from supervisors contradicting Plaintiffs' claims, and Plaintiffs' potential inability to prove that Defendants' alleged violations were willful. Accordingly, further litigation might result in Plaintiffs recovering less than the Settlement or perhaps

1   nothing at all, so this factor weighs in favor of approving the FLSA settlement.

2   *See* Kristensen Decl. ¶ 63.

3       **4.      *Scope of Any Release Provision in the Settlement***

4           ***Agreements***

5       Courts in this Circuit have rejected blanket releases of all potential claims

6   against the employer for all unlawful acts whatsoever. *See*, *e.g*., *McKeen-Chaplin*

7   *v. Franklin Am. Mortg. Co*., No. 10-CV-5243-SBA, 2012 WL 6629608, at *5

8   (N.D. Cal. Dec. 19, 2012) (ruling that the plaintiffs failed to demonstrate that it

9   would be fair and reasonable for a court to enforce a general release provision of

10  all claims related to their employment in an FLSA settlement); *Garcia v. Jambox,*

11  *Inc.*, No. 14-CV-3504-MHD, 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015)

12  (disapproving of release of all claims known and unknown against defendants,

13  including those that seemingly had "no relationship whatsoever" to wage and hour

14  issues); *Ambrosino v. Home Depot. U.S.A., Inc*., No. 11-CV-1319-MDD, 2014

15  WL 1671489, at *2-3 (S.D. Cal. Apr. 28, 2014) (same). However, when a district

16  court in the Ninth Circuit approves an FLSA collective action settlement, it may

17  approve a release of any claims sufficiently related to the current litigation. *See*

18  *Selk*, 159 F.Supp.3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA,*

19  *Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v. City of Seattle*,

20  955 F.2d 1268, 1287–89 (9th Cir. 1992)).

21      The Settlement Agreements here are similar to others approved in this

22  Distict. *See Johnson v. The Strip Joint*, No.8:19-cv-01623-JVS-KES, Dkt. 29 (Jan.

23  31, 2020);  *see alsoWoodmore v. Solitaire Holdings, LLC dba Knockouts*, No.

24  2:19-cv-09017-RGK-AGR, Dkt. 17 (Feb. 9, 2020). As such, the Settlement

25  Agreements here do not weigh against approval. *See* Kristensen Decl. ¶ 65.

26  ///

27  ///

28  ///

### 5. *Experience and Views of Counsel and Opinion of Participating Plaintiffs*

"In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Slezak*, 2017 WL 2688224, at *5 (quoting *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014)).

Plaintiffs' counsel and Defendants' counsel have substantial experience litigating wage and hour cases and handling complex and class actions. Counsel for the Parties knew the strengths and weakeneses of the opposing side's case as can vbe evidenced by the fully briefed motions before the Court. With the help of an experienced mediator, well-versed in FLSA cases, the Parties were able to reach a Settlement. Plaintiffs' counsel's substantial experience and judgment resulted in this extraordinary Settlement. Additionally, all Plaintiffs have been made aware of the terms of the settlement and have signed the settlement agreement. Accordingly, this factor weighs in favor of approval. *See* Kristensen Decl. ¶¶ 2-64; Exs. 1-14.

### 6. *Possibility of Fraud or Collusion*

When considering this factor, courts may look for indications that the plaintiffs' counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation" or for "evidence of more 'subtle signs' of collusion, such as 'when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded.'" *Selk*, 159 F. Supp. 3d at 1180 (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011)).

The proposed Settlement was the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiations between counsel, aided by well-known and experienced mediator

Judge Meisinger. While Plaintiffs' counsel is receiving payment of reimbursable costs and attorneys' fees from the Settlement, there is nothing out of the ordinary in this arrangement. *See Slezak*, 2017 WL 2688224, at *5 ("[C]ounsel is receiving a substantial fee. However, the class is also receiving a significant monetary benefit."); *Selk*, 159 F. Supp. 3d at 1179-80 ("[T]he amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records and an estimate of the degree of under-compensation during the relevant period. This approach guards against the arbitrariness that might suggest collusion." (citation omitted)). This factor therefore weighs in favor of approval. *See* Kristensen Decl. ¶ 66.

## VII.   ATTORNEYS' FEES AND COSTS

In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or the plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F.Supp.3d at 1180 (quoting *Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)). "Typically, attorneys' fees under the FLSA are determined using the lodestar medthod. . . . Lodestar amounts are presumed to be reasonable." *Kerzich v. County of Tuolumne*, 335 F.Supp.3d 1179, 1185-86 (E.D. Cal. Aug. 14, 2018).

It is well established that "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc*., 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted). "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or

downward." *Cullens v. Georgia Dep't of Transp*., 29 F.3d 1489, 1492 (11th Cir.1994) (citation omitted); s*ee also Association of Disabled Americans v. Neptune Designs, Inc*., 469 F.3d 1357, 1359 (11th Cir.2006) ("In calculating a reasonable attorney's fee award, the court must multiply the number of hours reasonably expended on the litigation by the customary fee charged in the community for similar legal services to reach a sum commonly referred to as the 'lodestar.' . . . The court may then adjust the lodestar to reach a more appropriate attorney's fee, based on a variety of factors, including the degree of the plaintiff's success in the suit."); *Reynolds v. Alabama Dep't of Transp*., 926 F.Supp. 1448, 1453 (M.D. Ala. 1995) ("After calculating the lodestar fee, the court should then proceed with an analysis of whether any portion of this fee should be adjusted upward or downward."). Here, Plaintiffs are requesting approval of an allocation of 45% of the settlement amount plus costs in accordance with the Plaintiffs' retainer agreements. *See Cicero v. DirecTV, Inc*., No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is relatively small."); *see also Alvarez v. Farmers Ins. Exch*., No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *3 (N.D. Cal. Jan. 18, 2017) ("Fee award percentages generally are higher in cases where the common fund is below $10 million."); *Gomez v. H & R Gunlund Ranches, Inc*., No. CV F 10-1163 LJO MJS, 2011 WL 5884224, at *5 (E.D. Cal. Nov. 23, 2011) (approving fees at 45% of the settlement fund).

Concurrently with this Motion, Plaintiffs' counsel will submit detailed billing entries demonstrating that a substantial amount of time and resources was needed to achieve this extraordinary result revealing a lodestar amount of $414,388.50. As such, Plaintiffs' counsel is merely requesting a negative multiplier of 0.84 and seeking $65,000 less than their loadstar to reach the 45% agreement each Plaintiff agreed to in their retainer agreement and which is noted

in the Settlement Agreements signed by all Plaintiffs. Further, this was a hard-fought case with experienced opposing counsel who were ready to try this case on the merits in trial (or arbitration), which would have exponentially increased the amount of attorneys' fees sought. *See* Kristensen Decl. ¶ 55, 67; Exs. 15-16.

While we recognize that such a percentage in a class action would be of concern in a common fund settlement or even a hybrid class or collective action, such is not the case here where the action is a standalone FLSA collective action. That is because "the fee-shifting provisions of the FLSA are intended to allow plaintiffs to find competent counsel if legal action is required to compel the employer to pay what is owed, because if the plaintiffs' claims are meritorious, counsel will be able to obtain its fees from defendants regardless of the size of the claims." *Kerzich*, 335 F.Supp.3d at 1188. Additionally, Plaintiffs' counsel took these cases on a contingency fee basis facing uncertainty as to whether any recovery would be achieved at Plaintiffs' counsel's cost. Plaintiffs spent considerable time and effort litigating this matter in good faith with the possibility of no recovery, which is oftentimes common in contingency fee cases. It is widely known that in some cases there is no recovery while in others there is a recovery and a multiplier on counsel's lodestar. Plaintiffs incurred costs of $25,005.48.[2] The fact that Plaintiffs' counsel's experience and time resulted in this extraordinary settlement emphasizes that to the extent a lodestar analysis would yield a lower figure, upward adjustment of the lodestar amount of 1.4% to reflect the 45% contingency fee pursuant to Plaintiffs' retainer agrteements of attorney's fees and costs is reasonable and appropriate. *See Crabtree v, Volkert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, at *7-8 (S.D. Ala. Feb. 14, 2013) (approving an upward adjustment of the plaintiffs' counsel's lodestar amount given the

---

[2] Plaintiffs' counsel received invoices for this matter after the costs had been finalized, thus Plaintiffs' counsel is seeling reimbursement solely of costs in the amount of $25,005.48 as allocated in the Agreements.

contingency nature of the lawsuit, the merits of the case, and the settlement reached). Thus, the proposed allocation of attorney's fees does not undermine the fairness or reasonableness of the amounts received by Plaintiffs for purposes of this FLSA settlement. *See* Kristensen Decl. ¶¶ 55, 68; Exs. 15-16.

## VIII. CONCLUSION

For the foregoing reasons, the Parties jointly request that the Court approve the Agreements and enter the proposed Order filed concurrently herewith.


Dated:  February 22, 2021          **KRISTENSEN LLP**

                                   */s/ John P. Kristensen*
                                   John P. Kristensen
                                   Jesenia A. Martinez
                                   Alejandro Marin

                                   ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Monday, February 22, 2021, a true and correct copy of the attached **PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** and accompanying documents were served via CM/ECF to all participants of record, including the following participants, pursuant to Fed. R. Civ. P. 5:

Robert C. Hayden
**EZER WILLIAMSON LAW**
21515 Hawthorne Boulevard, Suite 1150
Torrance, CA 90503
Email: *rch@ezerwilliamsonlaw.com*

*Attorney for Defendants*
**STARS PLANET INC. DBA SILVER REIGN GENTLEMEN'S CLUB, STANLEY YANG, BECKY SHEELY, AND DAVID CHEW**

Harold Greenberg
Joshua Tey
**LAW FIRM OF HAROLD GREENBERG**
2263 South Harvard Boulevard
Los Angeles, CA 90018
Email: *harold@hglaw.pro*
Email: *joshua@hglaw.pro*
Email: *melisa@hglaw.pro*

*Attorneys for Defendant*
**JOE DIAZ**

*/s/ John P. Kristensen*
John P. Kristensen